

## NUMBER 13-12-00524-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JUAN LUIS CAVAZOS, ALIZA MARIE
CAVAZOS, NIRAV DESAI AND
JANKI DESAI,                                                        Appellants,

v.

BOARD OF GOVERNORS OF THE
COUNCIL OF CO-OWNERS OF THE
SUMMIT CONDOMINIUMS,                                               Appellee.

### On appeal from the 107th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

By two issues, appellants Juan Luis Cavazos, Aliza Marie Cavazos, Nirav Desai,

and Janki Desai argue that the trial court erred in denying appellants' request for declaratory judgment because: (1) appellee's, the Board of Governors of the Council of Co-Owners of the Summit Condominiums ("Board of Governor's"), amendment to prohibit leasing or renting for less than thirty days is beyond the power and authority of the Board of Governors; and (2) Texas Property Code section 81.102(a)(8) prohibits the adoption of an amendment to a Condominium Declaration that alters or destroys the ownership rights of a unit owner affected by an amendment without the unit owner's consent. We affirm.

## I. BACKGROUND

Appellants were owners of condominium units at The Summit Condominiums located on South Padre Island, Texas. The Summit is a 64-unit building built in 1982. The Summit has a Condominium Declaration (the "Declaration") and Bylaws, both of which are recorded in the Cameron County Clerk's office.

Prior to 2011, the Declaration had the following provision, Article 6.2, regarding the leasing and renting of condominium units:

> The owners of the respective apartment units shall have the absolute right to lease or rent same or part thereof, not to exceed two (2) years, furnished or unfurnished, provided that said lease or tenancy is made subject to the covenants and restrictions contained in this Declaration and further subject to the Bylaws of this Condominium.

In 2011, owners voted on the following amendment (the "Amendment") to Article 6.2 of the Declaration:

> The owners of the respective apartment units shall have the right to lease or rent same or part thereof, for no less than thirty (30) days, furnished or unfurnished, provided that said lease or tenancy is made subject to the covenants and restrictions contained in this Declaration and further subject

2

to the Bylaws of this Condominium.

A similar change regarding the leasing and rental policy was adopted to the Bylaws.[1]  In order for these amendments to pass, they had to be agreed upon by two-thirds of the owners.[2]  The owners of 53 of the 64 units, or approximately 83% of the owners, consented to the adoption of the Amendment in writing.  The only non-consenting unit owners were appellants.

Appellants sued, challenging the adoption of the Amendments to the Declaration and Bylaws.  During the bench trial, appellants argued that the Amendments violated section 81.102(a)(8) of the Texas Property Code, which provides that "an amendment of the declaration may not alter or destroy a unit or a limited common element without the consent of the owners affected and the owners' first lien mortgagees."  TEX. PROP. CODE ANN. § 81.102(a)(8) (West 2007).  Appellants contended that the Amendment "altered or destroyed" their absolute ownership right to lease their personal property.  The Board of Governors countered by arguing that section 81.102 referred to alteration or destruction of physical aspects of a unit, such as the removal of a wall.

At the conclusion of the bench trial, the trial court ruled in favor of the Board of

---

[1]  The proposed change to the Bylaws stated as follows:

(9)  No apartment of part thereof may be leased or rented for less than thirty days.  The owner and/or rental agent must inform the Summit manager of his or her intent to lease or rent the specific unit.  Further, prior to the lease or rental of any apartment unit or part thereof, the owner and/or rental agent must contact the Summit manager and provide them with the unit number and the name, number of occupants, phone number, arrival date and departure date of the lessor [lessee] or renter.

[2]  Article 8.1 of the Declaration provided that, "This Declaration shall not be changed or amended except with the written consent of two-thirds (2/3) of the total ownership of the condominium units and the written consent of all mortgagees of such condominiums units."

Governors and denied appellants' request for declaratory judgment to declare the Amendment invalid and unenforceable. On appellants' request, the trial court also issued formal findings of fact and conclusions of law. This appeal ensued.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of Review

Findings of fact in a bench trial have the same force and dignity as a jury verdict and are reviewable for legal and factual sufficiency of the evidence by the same standards as applied in reviewing a jury's findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In reviewing for legal sufficiency, we consider only the evidence and inferences supporting the finding. *Minnesota Mining and Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 738 (Tex. 1997). If more than a scintilla of probative evidence supports the finding, the no evidence challenge fails. *Id*. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). In reviewing for factual sufficiency, we weigh all of the evidence in the record and overturn the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

We review a trial court's challenged conclusions of law as legal questions. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Accordingly, we apply a de novo standard. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). An

4

appellant may not challenge a trial court's conclusions of law for factual sufficiency. *BMC Software*, 83 S.W.3d at 794. However, we determine the correctness of the trial court's legal conclusions drawn from the facts. *Id.* If we determine that a conclusion of law is not correct, but the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal. *Id.*

**B.    Applicable Law**

Chapter 81 of the Texas Property Code is entitled the "Texas Condominium Act." *See* TEX. PROP. CODE ANN. § 81.001–.210 (West 2007). It applies to "condominium regime[s] created before January 1, 1994," like The Summit. Chapter 82 of the Texas Property Code is called the "Texas Uniform Condominium Act," *id.* § 82.001 (West 2007), and it applies to "all commercial, industrial, residential, and other types of condominiums in this state for which the declaration is recorded on or after January 1, 1994." *Id.* § 82.002(a) (West 2007). Chapter 82 does, however, have some applicability to condominiums built prior to 1994 in certain instances:

> This section and the following sections apply to a condominium in this state for which the declaration was recorded before January 1, 1994: Section 82.005, 92.006, 82.007, 82.053, 82.054, 82.102(a)(1)–(7) and (12)–(22), 82,108, 82.111, 82.113, 82.114, 82.116, 82.157, and 82.161. The definitions prescribed by Section 82.003 apply to a condominium in this state for which the declaration was recorded before January 1, 2004, to the extent the definitions do not conflict with the declaration. The sections listed in this subsection apply only with respect to events and circumstances occurring on or after January 1, 1994, and do not invalidate existing provisions of the declaration, bylaws, or plats or plans of a condominium for which the declaration was recorded before January 1, 1994.

*Id.* § 82.002(c) (West 2007).

"Courts have recognized the unique nature of condominium ownership and its

problems." *Gulf Shores Council of Co-Owners, Inc. v. Raul Cantu No. 3 Family Ltd. P'ship.*, 985 S.W.2d 667, 670 (Tex. App.—Corpus Christi 1999, pet. denied). "The owners make up a democratic subsociety more restrictive in the use of condominium property than property owners might accept in traditional forms of property ownership." *Id.* "Each owner must give up some historic rights of property ownership and the freedom of use of the property and subordinate those traditional ownership rights when electing to own a condominium unit." *Id.*; *see Sea Council of Co-Owners, Inc. v. Sondock*, 644 S.W.2d 774, 780 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.).

## III. ANALYSIS

### A. The Scope of Authority of The Summit's Board of Governors

By their first issue, appellants argue that the Board of Governors acted outside its scope of authority when it prohibited the rental of condominiums for less than thirty days. Article 3 of the Bylaws, which addresses the Board's powers, provides that, "The Board shall manage and administer the affairs of the Council and shall have all such duties, rights, powers, and authority given to it by the Act, the Declaration or Bylaws." Article 3 outlines specific tasks for the Board of Governors, such as keeping sufficient books, engaging the services of a manager, and formulating and enforcing appropriate policies to maintain the common elements of The Summit, such as the parking garage, pool, lobby, and elevator. Subparagraph (k) elaborates as follows:

> In general, the Board shall have all such duties, rights, and authority to do all such acts and things as are not by the Act, Declaration or these Bylaws directed to be done or exercised exclusively by the unit owners or council which shall be necessary or reasonably required for the successful and orderly administration, management, and operation of the Condominium Regime established by the Declaration to which these Bylaws pertain.

6

Appellants contend that the Board of Governors completely prohibited appellants' ability to rent, which was outside the scope of the Board's authority. Appellants argue that "a regulation or restriction is not reasonable as a matter of law if it prohibits something" completely. *See generally Murphy v. Wright*, 115 S.W.2d 448 (Tex. Civ. App.—Fort Worth 1938, no writ) (concluding that where a city ordinance was not merely a regulation, but an absolute prohibition, it exceeded the authority of a city council's rulemaking powers).

We disagree with appellants that the Amendment completely prohibited the owners' ability to rent. By adopting the Amendment, the Board placed a minimum-stay provision, limiting the minimum amount of time a unit owner can rent its condominium unit, similar to the previous two-year maximum limit already set forth in the Declaration. This limit was agreed to by more than eighty percent of the owners. In *Gulf Shores Council of Co-Owners, Inc.*, we held that the right to lease or rent "does not give an owner an absolute right to lease his unit without any restrictions; but rather the right is subject to all provisions and restrictions applicable." 985 S.W.2d at 670 (internal emphasis and quotations omitted). Based on The Summit's Bylaws and our precedent, we hold that the Board of Governors acted within its authority to pass the Amendment and set a reasonable rental restriction. We overrule appellants' first issue.

## B. Section 81.102(a)(8) of the Texas Property Code

By their second issue, appellants assert that the Amendments to the Declaration and Bylaws, which prohibit the leasing or renting of units at The Summit for no less than thirty days, violate section 81.102(a)(8) of the Texas Condominium Act. This statute

7

provides that "an amendment of the declaration may not alter or destroy a unit or a limited common element without the consent of the owners affected and the owners' first lien mortgagees." TEX. PROP. CODE ANN. § 81.102(a)(8).

Appellants testified by affidavit that ninety percent of the rentals for their condominium units are for periods of less than thirty days. Appellants rent their units "to help cover the property taxes, association fees, assessments and their mortgage payments." Thus, according to appellants, this restriction on their ability to rent "alters or destroys" an ownership interest without their consent. To buttress this argument, appellants cite the Declaration's definition of "unit":

> 2.5 <u>Condominium Unit</u>. A Condominium Unit shall include the ownership of an apartment and certain interests which are appurtenant to the apartment, including, but not limited to the following items:
>
> (a) <u>General Common Elements</u>. The ownership of an undivided interest in the general common elements, the same being shown on Exhibit "E" attached hereto and made a part hereof for all purposes;
>
> (b) A membership in the Council and an undivided interest in the funds and assets held by the Council, proportionate to the interest owned in the general common elements;
>
> (c) Exclusive use of one (1) covered parking space, patio, balcony, porch or deck attached to the individual condominium apartment.

The unfettered ability to rent their condominiums, appellants argue, is a "certain interest appurtenant" to their units.

The Summit's Board of Governors, on the other hand, contends that section 81.102(a)(8) refers to the "alteration" or "destruction" of a physical aspect of the unit, such as removing a wall. The few cases we found that cite this statute only refer to physical changes, too. *See Dickerson v. Debarbieris*, 964 S.W.2d 680, 686 (Tex.

8

App.—Houston [14th Dist.] 1998, no pet.) (citing the statute to contest the installation of a gate system as a common element to the condominium complex); *W. Campus Ramsey Props., Ltd. v. Encinal Condo. Owners' Ass'n*, No. 03-09-00146-CV, 2009 Tex. App. LEXIS 9863, at **11–15 (Tex. App.—Austin Dec. 30, 2009, pet. filed) (mem. op.) (citing section 81.102(a)(8) for authority to remove a wall that split a common terrace between two units).

We note that chapter 82 of the Texas Property Code defines a condominium unit as "a *physical* portion of the condominium designated for separate ownership or occupancy." TEX. PROP. CODE ANN. § 82.003(23) (West 2007) (emphasis added). Although chapter 81 applies to The Summit because it was built prior to 1994, the definitions contained in section 82.003 apply "to the extent the definitions do not conflict with the declaration." TEX. PROP. CODE ANN. § 82.002(c). The Declaration, as noted earlier, defines "unit" as ownership of an apartment and "certain interests which are appurtenant to the apartment," such as the general common elements like the pool, elevators, parking spaces, a membership in the Council, and an undivided interest in the funds in the Council's budget. Appellants do not cite to anything in the record, and we find nothing, showing that the Declaration's definition of "interests appurtenant" refers to an ownership interest such as leasing or renting.

The trial court apparently agreed with appellees' interpretation when it made the following conclusions:

> 37.    The Amendment does not alter or destroy a unit as reference[d] in § 81.102(a)(8).
>
> 38.    Under the Declaration and Chapters 81 and 82, "apartment" and

9

"unit" mean and refer to only the physical characteristics of a unit or apartment, not the right to rent or lease or any aspect of such right. The Amendment, therefore does not alter or destroy a unit.

Our standard of review requires us to determine the correctness of the trial court's legal conclusions drawn from the facts. *BMC Software*, 83 S.W.3d at 794. Here, the facts and supporting case law support the conclusion that section 81.102(a)(8) refers to the "alteration" or "destruction" of a physical aspect of a condominium unit, not the "alteration or destruction" of ownership rights like leasing or renting. *See* TEX. PROP. CODE ANN. § 81.102(a)(8).

In light of the foregoing, we overrule appellants' second issue.

## IV. CONCLUSION

Having overruled both of appellants' issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
19th day of September, 2013.